**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JERMALL E. JOHNSON,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **C.A. No. 15-24 Erie** |
| | ) |
| **OFFICER STEVEN DeLUCA, OFFICER** | ) |
| **MICHAEL SOROKES, AND OFFICER** | ) **Magistrate Judge Susan Paradise** |
| **ADAM R. EDMONDS,** | ) **Baxter** |
| **Defendants.** | ) |

## OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter

## I.    INTRODUCTION

### A.    Relevant Procedural and Factual History

On January 16, 2015, Plaintiff, Jermall E. Johnson, an inmate incarcerated at the State

Correctional Institution at Camp Hill, Pennsylvania, initiated this civil rights action by filing a

*pro se* complaint, pursuant to 42 U.S.C. § 1983, against Defendants Erie Police Department

("EPD") and EPD Officer Steven DeLuca. In his *pro se* complaint, Plaintiff alleged that, on June

28, 2014, Defendant Deluca used excessive force against him in violation of his Fourth

Amendment rights, and that Defendant EPD "failed to address" him after he filed a complaint

against Defendant DeLuca.

On June 17, 2015, Defendants filed a motion to dismiss, arguing that Plaintiff's claims

against them should be dismissed because Plaintiff failed to state a claim upon which relief may

be granted. [ECF No. 7]. On August 26, 2015, Defendants filed an addendum to their motion to

---

[1]

The parties have voluntarily consented to have a United States Magistrate Judge conduct the
proceedings in this case. [ECF Nos. 4, 11].

dismiss, to which they attached as an exhibit the docket from Plaintiff's underlying criminal

case, which indicates that he was found guilty, following a non-jury trial, of (1) possession of a

firearm with an altered manufacturer's number; (2) possession of a firearm by a prohibited

person; (3) carrying a firearm without a license; (4) possession of marijuana; and (5) possession

of drug paraphernalia.[2] [ECF No. 16-1 at 4-5]. In response, Plaintiff filed a "motion of response

in opposition," to which he attached an "affidavit of claim" that provides further details of his

claims. [ECF Nos. 12 and 12-1, respectively]. In the affidavit, Plaintiff avers:

> On or about 6-28-14 at approximately 0155 HRs, the Defendant "Officer Steven DeLuca" was involved in an incident involving an assault at a tavern, "Cramers Bar" on the 800 Block of East Ave. The Defendant did brandish his duty weapon and did point it directly at the Plaintiff. The Defendant then gave the Plaintiff one single vulgar command to "Get on the f*cking ground," and before the Plaintiff was giving [sic] the opportunity to respond or obey that command, and while Plaintiff's hands were in the air, in a surrenderance [sic] stance, the Defendant "Officer Steven DeLuca of the Erie Police Department" then took his booted foot and kicked the Plaintiff in the abdomen/groin area. The Defendant then forcefully struck the Plaintiff above his left eye with a metal flashlight, assaulted, and then forcefully wrestled the Plaintiff to the ground, only before re-brandishing his duty weapon and giving the Plaintiff another vulgar command to, "turn around and put your f*cking hands on your car," in which this time the Plaintiff was allotted enough time to obey the Defendant's command.

[ECF No. 12-1 at 1].[3] On August 13, 2015, Plaintiff filed a motion for summary judgment. [ECF

---

[2]

The Court may consider the docket pertaining to Plaintiff's underlying convictions in ruling on Defendants' motion to dismiss without converting it into a motion for summary judgment. See Khan v. Borough of Englewood Cliffs, No. CIV. 12-7837, 2014 WL 295069, at *3 (D.N.J. Jan. 27, 2014) (quoting Kist v. Fatula, Civ. No. 32006–67, 2007 W L 2404721, at * 4 (W.D. Pa. Aug.17, 2007)) (explaining that a court may consider "court docket entries and official court transcripts and documents which relate directly to the legal merits of a claim asserted by Plaintiff'").

[3]

The "Incident Date Sheet Report" prepared by Defendant DeLuca, which Plaintiff attached as an exhibit to his amended complaint, adds additional context to his claim. [ECF No. 40-1 at 17]. In the report, DeLuca explains that "at approximately 0155 hrs, numerous units were dispatched to Kramer's Tavern . . . for a large fight in and out of the bar. While units were in route, additional

No. 14].

On March 29, 2016, the Court issued an Opinion and Order, in which it granted in part and denied in part Defendants' motion to dismiss. In particular, the Court granted the motion as to EPD, but denied it as to Deluca, finding that Plaintiff's allegations were "minimally sufficient to state a Fourth Amendment claim of excessive use of force at this early stage of the proceedings." [ECF No. 24 at 8]. In the same Opinion and Order, the Court denied Plaintiff's motion for summary judgment, concluding that "it is quite apparent from the conflicting accounts of the incident at issue contained in Defendant Deluca's criminal complaint [ECF No. 7-1] and Plaintiff's 'Affidavit of Claim' [ECF No. 12-1] that there are genuine issues of material fact that preclude the entry of summary judgment[.]" [ECF No. 24 at 8].

On May 12, Plaintiff filed a "petition for leave to file amended complaint." [ECF No. 30]. In his "petition," Plaintiff sought permission to file his "amended claims and complaints" (hereinafter, "amended complaint"), which he had previously filed, along with numerous exhibits, without leave of Court on February 22, 2016. [ECF Nos. 22 and 23, respectively]. Defendants opposed the "petition." [ECF No. 31]. However, following a telephonic hearing on June 14, 2016, the Court issued a Text Order granting Plaintiff's request and allowing him to file

info was being given out that a [black male] had a gun. The dispatcher advised that the male with the gun was Jermall Johnson." [Id.]. DeLuca noted that he knew Plaintiff is a convicted felon who is prohibited from possessing a firearm. [Id.]. DeLuca reported that, as he arrived on the scene, he observed Plaintiff "standing at the passenger side of a gray Toyota sedan with the front door open which had a Texas license plate consistent with what the caller on 911 was giving out." [Id.]. DeLuca approached the vehicle "with duty weapon draw and flashlight in [his] left hand." [Id.]. After Plaintiff saw DeLuca, Plaintiff "immediately began to get back into the front passenger seat of the gray Toyota (Texas plate) and began to bend at the waist and did retrieve and [sic] item." [Id.]. DeLuca believed that he was retrieving the firearm or attempting to hide or discard it. [Id.]. DeLuca then reported that he heard "the metallic thud of the weapon hit the pavement," at which point he began to yell at Plaintiff "to get on the ground and show his hands." [Id.]. A struggle ensued. [Id.]. Eventually, Plaintiff was taken into custody, along with the firearm and a small amount of marijuana. [Id.]. Plaintiff was charged by warrant with numerous firearm violations, resisting arrest, and drug offenses. [Id. at 18].

his amended complaint. [ECF No. 39].

In his amended complaint, Plaintiff avers that he "files these claims and complaints under Perjury, Official Oppression, Intentional Infliction of Emotion Distress, and Conspiracy (Exhibits), malicious prosecution, and other Fourth Amendment violations."[4] [ECF No. 40 at 1]. In addition to the EPD and DeLuca, EPD Officers Adam R. Edmonds and Michael Sorokes are named as Defendants. With regard to Edmonds, Plaintiff asserts claims for "Perjury Under Oath, Official Oppression, Intentional Infliction of Emotional Distress, and Conspiracy." [Id. at 2]. More specifically, Plaintiff alleges that Edmonds' "incident data report contradicts Officer's [sic] Deluca and Sorokes incident data reports, his own testimony given in trial under oath, and testimony given by Officer Deluca at same trail [sic] under oath." [Id.]. With regard to Sorokes, Plaintiff also asserts claims "for Perjury, Official Oppression, Intentional Infliction of Emotional Distress, and Conspiracy (Incident Data Report)." [Id. at 3]. Plaintiff claims that Sorokes "openly lied and committed perjury, as can be reviewed in his incident data report." [Id.].

In the amended complaint, Plaintiff states that he "would also like to amend to his State Law Claim, a complaint against Officer Deluca for Assault and Battery, Official Oppression, Intentional Infliction of Emotional Distress, for this incident on June 28, 2014." [Id. at 4]. Plaintiff further alleges that DeLuca "arrested the Plaintiff's fiancé on October 3, 2014, on the date of Plaintiff's preliminary hearing, as an act of retaliation against the Plaintiff" and "continued to harass the Plaintiff after the June 28, 2014, incident." [Id.]. Specifically, Plaintiff alleges that "[o]n September 13, 2014, Officer Deluca filed another complaint against [him], and manipulated the Commonwealth, again by lying [about] the Plaintiff to gain another conviction,

---

4

Plaintiff had previously stated in his motion for summary judgment that his suit "is not based on false arrest, false imprisonment or malicious prosecution, nor any Fourth amendment violation." [ECF No. 14 at 1-2].

in which [Plaintiff] received a term of 15-30 years in a State Corrections Institution."[5] [Id.].

Finally, Plaintiff re-asserts a claim against the EPD, which had previously been dismissed, alleging that the EPD has a "policy or custom of assault by [its] employees against it's [sic] citizens for excessive force and this is their policy not to correct it." [Id. at 5].

On July 28, 2016, Defendants filed a motion to dismiss all of the newly asserted claims. [ECF No. 41]. They filed a brief in support of their motion, to which they have attached, as an exhibit, the opinion of the Pennsylvania Superior Court affirming Plaintiff's conviction arising out of the June 28, 2014, incident. [ECF Nos. 42 and 43, respectively]. On August 23, 2016, Plaintiff filed a "response to motion to dismiss amended claims and complaints," to which he attached as an exhibit (1) a letter from the Office of the Prothonotary of the Supreme Court of Pennsylvania advising the Ernie County District Attorney's Office of its right to file an Answer to Plaintiff's petition for allowance of appeal in his criminal case; and (2) a newspaper article about the alleged use of excessive force by EPD officers. [ECF Nos. 47 and 47-1, respectively]. On September 14, 2016, Defendants filed a supplement to their motion to dismiss, to which they attached (1) an affidavit prepared by Defendant DeLuca, which incorporates by reference his incident report regarding the June 28 incident; and (2) a portion of the transcript of Plaintiff's criminal trial. [ECF No. 54]. Plaintiff filed a response to Defendants' supplement, taking issue

---

[5] Plaintiff attempts to elaborate on this incident, and the claim arising therefrom, in his "affidavit of claim" and various supporting exhibits, filed on August 29, 2016. [ECF No. 50 and 50-1, respectively]. However, "[i]n determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments *without reference to other parts of the record*." Jordan v. Fox, Rothchild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994) (emphasis added). Thus, "supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint." In re Pitt Penn Holding Co., Inc., 2011 WL 4352373, at *11 (Bankr. D. Del. Sept. 16, 2011) (citation and quotation marks omitted). For that reason, the Court will not consider any of the additional averments set forth in the "affidavit of claim" filed on August 29 in determining whether Plaintiff states a claim.

with the contents of DeLuca's affidavit. [ECF No. 55]. Finally, on October 21, 2016, Defendants filed a reply to Plaintiff's response, to which they attached the full transcript of Plaintiff's criminal trial. [ECF No. 56-1].

**B.      Standards of Review**

**1.      Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). A Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556 (citing 5 C.Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough

facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del. February 19, 2008) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

The Third Circuit subsequently expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)).

**2.** *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552,

555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); <u>Freeman v. Dep't of Corr.</u>, 949 F.2d 360 (10th Cir. 1991).

## III.   DISCUSSION

Defendants advance several arguments in support of their motion to dismiss. They argue that (1) the claim for malicious prosecution arising out of the incident on June 28, 2014, is barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994); (2) the claim for "other Fourth Amendment violations" lacks specificity and, in any event, is also barred by <u>Heck</u>; (3) perjury and official oppression are not recognized causes of action;  (4) Plaintiff has failed to state a claim for intentional infliction of emotional distress; (5) Plaintiff has failed to state a claim for conspiracy; (6) Plaintiff lacks standing to assert a claim on behalf of his fiancé regarding her arrest in October 2014;  and (7) any claims arising from the incident on September 13, 2014, are barred by <u>Heck</u>. All told, then, Defendants asks the Court to dismiss the amendments to the complaint with prejudice.

### A.   Malicious Prosecution

Insofar as Plaintiff is alleging a claim for malicious prosecution arising out of the incident on June 28, 2014, the Court agrees with Defendants that such claim is barred by <u>Heck v. Humphrey</u>. In <u>Heck</u>, the United States Supreme Court explained that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been

invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486–87. Because a ruling in Plaintiff's favor on his malicious prosecution claim against Defendants would "imply the invalidity of his convictions" and the convictions have not be invalidated, the claim is not cognizable in this action.

**B.** **"Other Fourth Amendment Violations"**

Regarding the claim for "other Fourth Amendment violations," the amended complaint fails to identify what specific violations Plaintiff believes occurred during the incident or precisely when those violations took place. But judging by his statements elsewhere in his filings and the exhibits attached thereto, including the brief he submitted on appeal to the Superior Court, which both parties have attached as an exhibit to their filings, it appears that Plaintiff is claiming that Defendant DeLuca did not have reasonable suspicion to stop him outside of Cramer's Tavern on the night of June 28. [ECF No. 47 at 1 and ECF No. 40-1 at 11-15]. Defendants argue that any such claim should be dismissed because "Plaintiff has provided no supporting factual averments." [ECF No. 42 at 3]. They further argue that, "assuming [Plaintiff] means false arrest and false imprisonment, such claims are barred[.]" [ECF No. 42 at 3]. It is "clear," they argue, "that the Plaintiff wishes to retry his criminal case by raising questioning concerning Officer DeLuca's reasons for confronting and arresting him for unlawful possession of a firearm. If he wishes to challenge the results of the prosecution, he should pursue the matter in the appropriate forum." [Id.].

The Court agrees with Defendants that Plaintiff has failed to plead a plausible Fourth Amendment claim based on his stop and arrest. The Fourth Amendment protects "unreasonable searches and seizures." U.S. Const. amend. IV. "In [Terry v. Ohio, 392 U.S. 1, 21 (1968)], the

Supreme Court held that brief investigative stops were 'seizures' subject to Fourth Amendment protection, and that a police officer may conduct such a stop only if the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Johnson v. Campbell, 332 F.3d 199, 205 (3d Cir. 2003) (quoting Terry, 332 F.3d at 21). "In judging the reasonableness of stops, [the Court] must ask if 'the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief' that 'criminal activity may be afoot.'" Id. (quoting Terry, 332 F.3d at 21-22). In this case, Plaintiff has not set forth sufficient facts from which the Court could plausibly infer that Defendant DeLuca acted without reasonable suspicion. Indeed, he has not alleged any facts regarding the circumstances surrounding the stop, and the incident report, which Plaintiff himself attached to his amended complaint, makes clear that Defendant DeLuca certainly had a basis for approaching Plaintiff. It had been reported that there was a fight at Cramer's Tavern and that a man believed to be Plaintiff – with whom Defendant DeLuca was familiar – had a firearm.

Even assuming, for the sake of argument, that Plaintiff had set forth sufficient facts to state a claim for a violation of his Fourth Amendment rights in, the Court would nonetheless be inclined to dismiss this claim. As Defendants argue, Plaintiff raised this issue in his motion to suppress before the trial judge and on appeal before the Superior Court and both courts ruled against him, finding that there was reasonable suspicion for the stop. He is bound by those determinations and cannot relitigate the issue in this lawsuit. See Ashford v. Skiles, 837 F. Supp. 108, 112 (E.D. Pa. 1993) ("The doctrine of issue preclusion is applicable to § 1983 actions where the alleged conduct underlying the § 1983 claim was the subject of a state court criminal proceeding which afforded the parties a full and fair opportunity to litigate all potential civil

rights claims.").

### C.    Perjury and Official Oppression

Plaintiff alleges that Defendants Edmonds and Sorokes committed perjury and official oppression. It is not clear whether these claims are asserted under Pennsylvania law or § 1983. To the extent they are based on Pennsylvania law, the Court agrees with the Defendants that they fail as a matter of law. "[T]here is no private cause of action for perjury under Pennsylvania law." Amos v. NMS Labs, 2013 WL 504181, at *1 (M.D. Pa. Feb. 12, 2013). Likewise, the official oppression statute, 18 Pa. Cons. Stat. § 5301, does not provide a private cause of action for citizens allegedly victim to the violating conduct." Mathias v. Kershaw, 2010 WL 1329067, at *4 (M.D. Pa. Mar. 29, 2010).

To the extent these are federal claims, they still fail. Any constitutionally based claim that Defendants Edmonds and Sorokes committed perjury at Plaintiff's trial are "legally baseless" because these Defendants have absolute immunity from claims based on their testimony at trial. See Rehberg v. Paulk, ---U.S. ----, 132 S. Ct. 1497, 1505 (2012) ("[A] trial witness has absolute immunity [from suit under § 1983] with respect to any claim based on the witness' testimony."). Moreover, just as "official oppression" is not a recognized tort under Pennsylvania law, it does not provide "provide a basis for bringing a claim under § 1983." Tighe v. Purchase, 2014 WL 3058434, at *9 n.8 (W.D. Pa. July 7, 2014) (citation omitted). Thus, both of these claims will be dismissed.

### D.    IIED

Plaintiff alleges that Defendants' conduct caused him emotional distress. To establish a claim under Pennsylvania law for IIED, a plaintiff must show that a defendant: (1) by extreme and outrageous conduct (2) intentionally or recklessly caused (3) severe emotional distress.

Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). Extreme and outrageous conduct is defined as conduct "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." Hunger v. GrandCent. Sanitation, 670 A.2d 173, 182 (Pa. Super. Ct. 1996) (citing Restatement (Second) of Torts § 46 cmt. D (1977)). "Conduct that Pennsylvania courts have deemed sufficiently outrageous to constitute IIED includes: (1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease." Dull v. W. Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 756 (M.D. Pa. 2009) (citation omitted). Conversely, courts have routinely dismissed claims for IIED based on allegedly unlawful arrests and claims of excessive force. See, e.g., id. ("[T]he allegedly improper arrests . . . are not sufficiently extreme and outrageous to support a claim for IIED. At most, defendants miscalculated the propriety of their law enforcement activities."); Whiting v. Bonazza, 2011 WL 500797, at *14 (W.D. Pa. Feb. 10, 2011) (same). Plaintiff's allegations fall into the latter category and, thus, his IIED claim will be dismissed.

### E.     Conspiracy

Plaintiff asserts in his response to Defendants' motion that he "is also filing Civil Conspiracy Claims against Officers Sorokes and Edmonds under 42 U.S.C.A. § 1985." [ECF No. 47 at 2]. However, "because section 1985(3) requires 'the intent to deprive of equal protection, or equal privileges and immunities,' a claimant must allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' in order to state a claim." Suber v. Guinta, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012) (quoting Farber v. City of

Paterson, 440 F.3d 131, 135 (3d Cir. 2006)). Plaintiff has not raised any such allegations, so § 1985(3) does not provide him any basis for seeking relief.

Courts also recognize, "however, that civil conspiracy [can be] a vehicle by which § 1983 liability may be imputed to those who have not actually performed the act denying constitutional rights." PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 832 (D.N.J. 1993). "In order to state a cause of action for civil conspiracy under § 1983, a plaintiff must plead both the elements of [a] cause of action under § 1983 and conspiracy." Langella v. Cercone, 2010 WL 2402971, at *3 (W.D. Pa. June 10, 2010) (citations omitted). "With respect to the conspiracy aspect of a Section 1983 conspiracy claim, in order to survive a Rule 12(b) (6) motion to dismiss, a plaintiff's 'allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.'" Id. (quoting Capogrosso v. The Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009)).

Here, Plaintiff has failed to plead sufficient facts from which the required elements of conspiracy can be inferred. He has not identified the parties to the alleged conspiracy, when they entered into an agreement, what the agreement was about, etc. As a result, this claim will be dismissed.

### F.      Retaliatory Arrest of Plaintiff's Fiancé

Plaintiff claims that Defendant DeLuca arrested his fiancé "as an act of retaliation against [him]." [ECF No. 40]. In order to plead a retaliation claim, "a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).

Defendants argue that this claim should be dismissed because Plaintiff lacks standing to raise a claim on behalf of his fiancé. As the Court construes the amended complaint, however, Plaintiff is not actually seeking to assert a claim on behalf of his fiancé. Rather, he appears to be claiming that Defendants retaliated against him, personally, by arresting his fiancé. Such conduct, if proven, could be enough to satisfy the second prong of the test. See Savokinas v. Borough of Avoca, 2010 WL 235132, at *4 (M.D. Pa. Jan. 19, 2010) ("Fear of reprisal against one's family is certainly sufficient retaliatory action to satisfy the second prong of the test, as it would likely act as deterrent for the person of ordinary firmness."). Be that as it may, Plaintiff's claim suffers from a more fundamental flaw: nowhere has he pleaded that he engaged in any "constitutionally protected conduct." His retaliation claim fails on that basis, irrespective of whether the allegedly retaliatory conduct was directed at him or his fiancé.

G.      Claims Arising from Incident on September 13, 2014

It is not clear what type of cause of action Plaintiff is attempting to assert related to this incident. If he is asserting a malicious prosecution claim, he has pleaded himself out of court by admitting that he was convicted and sentenced to prison following this incident, and there is no indication that his conviction has been overturned or otherwise invalidated. See Heck, 512 U.S. at 486–87. And if he is attempting to state some other type of Fourth Amendment claim, he likewise has not succeeded in doing so, as he has not pleaded any facts whatsoever regarding the circumstances surrounding his arrest. While such facts do appear in Plaintiff's most recent "affidavit of claim," for the reasons set forth above, the Court cannot consider those allegations when determining whether Plaintiff has stated a claim. See supra n.4. Accordingly, all claims related to the incident on September 13, 2014, will be dismissed.

### H.    Claim against EPD

Plaintiff attempts to re-assert a claim for municipal liability against the EPD, alleging that the EPD has a "policy or custom of assaults" and that it was "aware of numerous recent public assaults against other citizens for excessive force and this is their policy not to correct it." [ECF No. 40 at 5]. This claim was dismissed with prejudice previously and cannot be reasserted here. Maydak v. United States Dep't of Educ., 150 F. App'x 136, 138 (3d Cir. 2005) (explaining that "dismissal with prejudice means that [the plaintiff] may not seek to reinstate this [claim]"). In any event, as the Court previously explained when dismissing the claim against EPD in Plaintiff's original complaint, municipal liability under §1983 requires the plaintiff to prove the existence of a policy or custom that resulted in a constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978). While the allegations of municipal liability in the amended complaint are more numerous than in the original complaint, they are nonetheless too conclusory to state a claim. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, this claim will once again be dismissed.

## IV.    CONCLUSION

Based on the foregoing, Defendants' motion to dismiss [ECF No. 41] is granted as to the newly added claims in the amended complaint. Consistent with the Court's ruling on Defendants' first motion to dismiss, however, Plaintiff will be permitted to pursue his excessive force claim against Defendant DeLuca arising out of the incident on June 28, 2014.

An appropriate Order is attached.

January 20, 2017

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate JudgE